IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DWIGHT ECHOLS, SR., | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO.  06-04076 |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE,[1] | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

Giles, J.                                                                          January 30, 2008

## I.  INTRODUCTION

Plaintiff Dwight Echols, Sr. seeks judicial review under 42 U.S.C. §§ 405(g) and

1393(c)(3) of the final decision of the Commissioner of Social Security ("Commissioner")

denying Plaintiff's claim for Social Security Disability Insurance ("SSDI") Benefits and

Supplemental Security Income ("SSI") Benefits under Titles II and XVI of the Social Security

Act ("Act"), 42 U.S.C. §§ 401 et seq. and 1381 et seq.  Plaintiff filed a Request for Review

seeking a judgment awarding him benefits or, alternatively, reversal of the Commissioner's

decision and remand for further action consistent with the court's decision.  Defendant filed a

Response to Request for Review, arguing that substantial evidence supports the Commissioner's

decision that Plaintiff was not disabled.  For the reasons that follow, Plaintiff's alternative

motion for remand is granted.  The matter is remanded to the Commissioner for further

_____

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security
and, pursuant to Fed. R. Civ. P. 25(d)(1), should be substituted for former Commissioner Jo
Anne B. Barnhart as the official defendant in this matter.

proceedings consistent with this Memorandum and the related Order.

## II. PROCEDURAL HISTORY

On April 26, 2004, Plaintiff filed an application for Social Security Disability Insurance

Benefits and Supplemental Security Income Benefits, alleging an onset disability beginning on

November 8, 2000, which was amended to November 8, 2002.[2] (R. 51-53, 71, 321.)  Plaintiff

was last insured for disability insurance benefits on March 31, 2004.  (R. 24, 55.)  After the claim

was denied at the initial level of the administrative appeals process, Plaintiff requested a hearing

before an Administrative Law Judge ("ALJ").  (R. 39.)  On June 3, 2005, Plaintiff, represented

by counsel, appeared at the hearing.  (R. 315-341.)

On September 13, 2005, the ALJ found that Plaintiff was not disabled and denied

Plaintiff's claim.  (R. 21-32.)  Plaintiff then filed a Request for Review of the ALJ's decision

with the Appeals Council, which was denied on July 10, 2006.  (R. 7-11, 20.)  While this appeal

was pending, on October 21, 2005, Plaintiff filed a new claim for Supplemental Security Income

Benefits.  He was granted benefits on that claim beginning October 24, 2006.  After the Appeals

Council's denial of his appeal, Plaintiff filed a complaint pursuant to 42 U.S.C. § 405(g) and

1383(c)(3) in this court on September 12, 2006.

## III. FACTUAL BACKGROUND

The following statement of facts is undisputed.  Plaintiff, whose date of birth is October

---

[2] Citations to the administrative record will be indicated by "R." followed by the page number.

18, 1955, was 47 years old as of his alleged onset date of disability, on November 8, 2002.  He

was 49 years old as of the time of the hearing.  He completed the ninth grade.  (R. 319.)  He has

past relevant work as an automobile detailer.  (R. 319-20.)  He is 5'8" in height and weighs 135

pounds.  (R. 70.)  Plaintiff asserts that he suffers from chronic severe pain and other exertional

and non-exertional limitations secondary to degenerative disc disease in the lumbar spine, disc

herniations, chest pain, and anxiety disorder with agoraphobia.


## IV.  STANDARD OF REVIEW

When a district court reviews a decision of the Commissioner, review is limited to the

Commissioner's final decision.  42 U.S.C. § 405(g); Podedworny v. Harris, 745 F.2d 210, 217

(3d Cir. 1984).  If the Commissioner's decision is supported by substantial evidence, the decision

must be upheld, even if this court would have reached a different conclusion.  Richardson v.

Perales, 402 U.S. 389, 401 (1971).  Substantial evidence has been defined as "such relevant

evidence that a reasonable mind might accept as adequate to support a conclusion."  Consol.

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  In this context, substantial evidence is more

than mere scintilla, but may be somewhat less than a preponderance of the evidence.  Ginsburg v.

Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971).  Review of "an agency's interpretation of legal

precepts, as demonstrated by its application of such precepts to the facts," is plenary.  Monsour

Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).


## V.  DISCUSSION

To establish eligibility for SSDI and SSI, a plaintiff has the burden to show that he is

unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2002). To determine disability, the Social Security Administration applies a five-step test. 20 C.F.R. § 416.920; Burns v. Barnhart, 312 F.3d 113, 118-19 (3d Cir. 2002).

At step one, the Commissioner must determine whether a claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.920(b); Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If so, then he is not disabled. Id. At step two, the Commissioner must determine whether claimant suffers from a "severe" impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is determined not to be disabled. Id. At step three, the Commissioner must determine whether the claimant's severe medical impairment(s) meet or equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). Id. If so, the claimant is disabled. Id. If the claimant's impairment(s) do not meet a listed condition, the Commissioner proceeds to step four to determine whether a claimant retains the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 416.920(e)-(f); Plummer, 186 F.3d at 428. "Residual functional capacity is defined as 'what a claimant can do despite his limitations.'" Burns, 312 F.3d at 119 (quoting 20 C.F.R. § 416.945(a)). If the claimant retains such capacity, he is not disabled. Plummer, 186 F.3d at 428. If not, the Commissioner proceeds to step five. Id. At this final step, the burden of production shifts to the Commissioner to demonstrate that there are jobs existing in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 416.920(e), (g); Plummer, 186 F.3d at

428.

The ALJ found that: (1) Plaintiff meets the non-disability requirements for a period of disability and disability insurance benefits through March 31, 2004; (2) Plaintiff had not engaged in substantial gainful activity since November 8, 2002; (3) Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, adjustment disorder, and polysubstance abuse; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Regulations No. 4, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (5) Plaintiff has the RFC to lift and carry 10 pounds occasionally, and less than 10 pounds frequently, stand and walk at least 2 hours in an 8-hour workday, sit at least 6 hours in an 8-hour workday; is limited in ability to push and pull in his lower extremities, requires an option to alternatively sit and stand, at alternatives of his choosing, and can only occasionally perform all postural activities; and due to emotional impairment and limited education, requires simple routine and repetitive work instructions and work requiring limited contact with the general public; (6) Plaintiff is unable to perform any relevant past work; (7) Plaintiff was born on October 18, 1955 and was 47 years old on the alleged disability onset date, which is defined as a younger individual; (8) Plaintiff has a limited education but is able to communicate in English; (9) Plaintiff's past relevant work is unskilled and, therefore, transferability of job skills is not an issue; (10) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and (11) Plaintiff has not been under a "disability" from November 8, 2002 through the date of the ALJ's decision.  (R. 26-32.)

Plaintiff appeals the decision of the ALJ and argues that the ALJ's determination that

Plaintiff is not disabled is not supported by substantial evidence. Plaintiff alleges a number of

errors at steps four and five of the sequential evaluation regarding whether Plaintiff is capable of

full-time work, including error: (1) in the determination of Plaintiff's credibility; (2) in the

formulation of the RFC; and (3) in relying on Vocational Expert ("VE") testimony that was

inconsistent with the Dictionary of Occupational Titles. The Commissioner counters that the

ALJ's decision is well-supported and should be upheld.

Upon careful review of the entire record, the court concludes that the ALJ erred in the

determination of Plaintiff's credibility, requiring remand for correction. The RFC formulation

and subsequent hypothetical upon which the VE's testimony was based were dependent in part

on flawed credibility determination. Therefore, in light of any new determinations on remand,

the ALJ should re-evaluate Plaintiff's residual functional capacity and re-assess the VE's

testimony.


**A.     The ALJ Erred in the Determination of Plaintiff's Credibility.**

To be credible, subjective symptoms must bear some relationship to a claimant's

physical, mental, or psychological status, as demonstrated by objective medical findings,

diagnoses, and opinions. See Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); 20 C.F.R.

§§ 404.1526, 404.1529, 416.926, 416.929. An ALJ may discredit a claimant's subjective

complaints when: (1) there is contradictory medical evidence in the record, and (2) the ALJ

explains the basis for rejecting the complaints. See Mason v. Shalala, 994 F.2d 1058, 1067-68

(3d Cir. 1993). If medical signs or laboratory findings show that claimant has a medically

determinable impairment that could produce pain, the ALJ must consider all available evidence,

6

including claimant's statements, to determine whether and how the symptoms limit claimant's capacity to work.  See 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); SSR 96-7p, 61 Fed. Reg. 34,483, 34,484 (July 2, 1996) (requiring that a credibility finding be "sufficiently specific to make clear . . . to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight").

In evaluating credibility, relevant factors include: Plaintiff's daily activities; the location, duration, frequency, and intensity of Plaintiff's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment or measures, other than medication, Plaintiff receives or has received for relief of symptoms; and other factors concerning functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 61 Fed. Reg. at 34,484; see Alvarez v. Sec'y of Health and Human Serv., 549 F. Supp. 897, 899-900 (E.D. Pa. 1982).  In making credibility findings, "the ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding," so that the court is able to assess whether significant probative evidence was credited or ignored.  Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999).

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that his "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. 29.) The ALJ further stated: "The medical reports support some of claimant's allegations of limitations due to his symptoms.  I find that claimant's allegations to be partially credible." (R. 30.) Plaintiff argues that the ALJ mentioned some of the testimony, but failed adequately to

7

assess testimony, which if credited would have been consistent with a determination of disability. Specifically, he argues that the ALJ erred in: (1) relying on State Agency Medical Consultants ("SAMC") assessments in finding that Plaintiff was not entirely credible, while rejecting these same assessments in his RFC formulation; (2) failing to explain his reliance on a global assessment of functioning ("GAF") rating of 57 by an "acceptable medical source" and not on a GAF rating of 45 from a medical source who was not an "acceptable medical source"; and (3) failing to explain how he determined which of Plaintiff's statements were credible and which were not in light of the ALJ's findings on RFC restrictions. Defendant counters that the ALJ's analysis of Plaintiff's subjective complaints was detailed and thorough, and supported by substantial evidence in the record.

### 1.    The SAMC Assessments.

Plaintiff argues that the ALJ erred when he relied on the assessments of two non-examining SAMCs in finding that Plaintiff was not entirely credible, while rejecting these same assessments in his RFC formulation. One SAMC, Candelaria G. Legnapi, M.D., opined that Plaintiff could perform light work, (R. 215-21), and the second, Thomas Fink, Ph.D., a state agency psychologist, found no severe mental impairment, (R. 222-235).

In the findings leading to the ALJ's credibility assessment, the ALJ described the opinions of the two SAMCs. (R. 29.) The ALJ stated that he had considered these SAMC assessments, but was "not generally relying" on them because he was "persuaded, after reviewing ... treating physician's reports, that claimant's limitations are somewhat more restricting than the State's assessment." (R. 30.) In his RFC formulation, the ALJ found instead that Plaintiff

was limited to sedentary (not light) work with additional limitations due to a severe (not non-severe) mental impairment  (R. 30.)  Plaintiff argues that the ALJ's reliance on the SAMC assessments for credibility, but not for the RFC formulation, is inherently contradictory and irreconcilable.

Defendant counters that the ALJ was entitled to consider the SAMC opinions and that such consideration was consistent, even though he gave them only limited weight, because the SAMC opinions supported the ALJ's credibility finding that Plaintiff was not as limited as he had alleged.  The issue, however, is not whether the ALJ was entitled to consider the SAMC opinions; clearly, he was.  Rather, the issue is to what extent, if any, the ALJ relied on the SAMC opinions in his credibility finding, and, if he did, why he relied upon them for a credibility finding but not the RFC finding.  The ALJ's decision leaves these important questions unanswered.  Without providing any explanation, reliance on the SAMC opinions for the credbility determination, but not for the RFC determination, creates contradiction.  The ALJ's failure to state clearly to what extent he relied on the SAMC opinions, and why for his credibility finding, when he did not rely on them for his RFC finding, leaves the court unable to assess properly whether significant probative evidence was credited or ignored.  See Schaudeck, 181 F.3d at 433.  This failure was an error requiring remand.

### 2.    The GAF Evaluation.

Plaintiff next argues that the ALJ's credibility finding failed to explain why he relied on a GAF rating of 57, determined by Dr. Ely Sapol, an evaluating psychologist, (R. 195), but did not account for a GAF rating of 45 contained in a report from the offices of Robert Kay, M.D., a

treating psychiatrist (R. 247). A GAF rating of 45 indicates "serious symptoms, e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting, OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic & Statistical Manual for Mental Disorders ("DSM") 32 (4th ed. 1994). A GAF rating of 57, on the other hand, indicates "moderate symptoms (e.g., flat affects and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." Id. The ALJ described both GAF ratings, but noted that the report containing the GAF 45 rating did not include a "Medical Source Statement with reference to the extent of any emotionally based limitations." (R. 29-30.) In his credibility finding, the ALJ found that Plaintiff's alleged symptoms and daily activities were consistent "with medical reports showing mild to moderate symptoms," (R. 30), i.e., consistent with the GAF 57 rating but not the GAF 45 rating.

Defendant argues that the ALJ was entitled to accord the GAF 57 rating greater weight than the GAF 45 rating because the GAF 57 rating was determined by an acceptable medical source. See 20 C.F.R. § 404.1512(a). Defendant contends that the GAF 45 rating was determined, not by the treating psychiatrist, but by Jacqui Stabler, a Master's Level Clinician, and reviewed by Michael J. Rocke, L.S.W., a Licensed Clinician, (R. 250), who were not acceptable medical sources pursuant to 20 C.F.R. § 404.1513(a). Defendant further contends that this GAF rating was issued after an initial intake visit and before any treatment had occurred. Thus, Defendant argues that the ALJ properly accorded less weight to the GAF 45 rating.

Plaintiff relies on Social Security Ruling 06-3p, 2006 SSR LEXIS 4 (Aug. 9, 2006), for the proposition that simply because Dr. Sapol was an acceptable medical source does not

automatically entitle his opinion to more weight.  SSR 06-3p clarifies existing SSA policies as to

"how [the Commissioner] consider[s] opinions and evidence from medical sources who are not

'acceptable medical sources' and from 'non-medical sources.'"  2006 SSR LEXIS 4, at *3, 11.

SSR 06-3p applies retroactively here, notwithstanding the fact that the ALJ issued his decision

before the ruling was made.  See, e.g., Bowman v. Astrue, No. 06-6380, 2008 U.S. App. LEXIS

73, at *14-15 (10th Cir. Jan. 4, 2008) (finding that SSR 06-3p applies retroactively).

SSR 06-3p explains:

> [The existing] regulations provide specific criteria for evaluating medical opinions
> from "acceptable medical sources"; however, they do not explicitly address how
> to consider relevant opinions and other evidence from "other sources" listed in 20
> C.F.R. 404.1513(d) and 416.913(d). With the growth of managed health care in
> recent years and the emphasis on containing medical costs, medical sources who
> are not "acceptable medical sources," such as nurse practitioners, physician
> assistants, and licensed clinical social workers, have increasingly assumed a
> greater percentage of the treatment and evaluation functions previously handled
> primarily by physicians and psychologists. Opinions from these medical sources .
> . . are important and should be evaluated on key issues such as impairment
> severity and functional effects, along with the other relevant evidence in the file.

2006 SSR LEXIS 4, at *9.

SSR 06-3p provides that, although the

> fact that a medical opinion is from an "acceptable source" . . . may justify giving
> that opinion greater weight than an opinion from a medical source who is not an
> "acceptable medical source" . . . , depending on the particular facts in a case, and
> after applying the factors for weighing opinion evidence, an opinion from a
> medical source who is not an "acceptable medical source" *may outweigh* the
> opinion of an "acceptable medical source," including the medical opinion of a
> treating source.

2006 SSR LEXIS 4, at *13-14 (emphasis added).  Thus, SSR 06-3p directs the ALJ to "explain

the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion

of the evidence in the determination or decision allows a claimant or subsequent reviewer to

follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 2006 SSR LEXIS 4, at *16-17.

Although Defendant argues that the GAF 45 rating was issued after an initial intake visit and before any treatment had occurred, this information was not considered by the ALJ in his findings, (cf. R. 29-30), and Defendant may not substitute its reasons for that of the ALJ's. See Fargnoli v. Halter, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) ("[T]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based")).

Other than noting that the GAF 45 assessment did not contain a "Medical Source Statement," indicating that the assessment was not from an "acceptable medical source," the ALJ failed to explain so that a reviewing court could comprehend why he accorded greater weight to the opinion from an "acceptable medical source" than he apparently accorded an opinion from a medical source who is not an "acceptable medical source." See id. This was another error to be addressed on remand.

### 3.    Plaintiff's Statements.

Finally, Plaintiff argues that the ALJ erred in his credibility determination in finding that Plaintiff's daily activities were consistent with "mild to moderate" symptoms and therefore contradicted Plaintiff's allegations of total disability, which Plaintiff argues are supported by the medical record. Specifically, Plaintiff argues that it is impossible to ascertain how the ALJ determined which of Plaintiff's statements were credible, and which were not, from the ALJ's findings on RFC restrictions, which include sedentary work, postural limitations, limitations in

12

lower extremity manipulation, the option to sit or stand at will, and limited contact with the general public, (R. 30). For example, Plaintiff properly questions why the ALJ: determined that Plaintiff was unable to be around the general public but was able to be around coworkers; credited Plaintiff's statement that he needs to sit or stand at will, but not the statement that he needs to leave the workstation periodically for comfort, (R. 339); and determined as incredible that Plaintiff's statement that he needs to lie down for two hours during a day.

Defendant draws upon various medical evidence in the record to argue that the ALJ's finding that Plaintiff's allegations of total disability were not credible was supported by substantial evidence. This does not excuse the ALJ's failure to address the above-posed questions. See Chenery Corp., 318 U.S. at 87; Fargnoli, 247 F.3d at 44 n.7. The ALJ's failure to indicate clearly in his credibility finding which of Plaintiff's statements he credited, which he found were not supported by the medical record, and why, leaves the court unable to assess properly whether significant probative evidence was credited or ignored. See Schaudeck, 181 F.3d at 433. This too was error to be addressed on remand.

## B.    The ALJ's RFC Formulation.

In determining the RFC, the ALJ must consider all relevant evidence. Fargnoli, 247 F.3d at 41. "That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." Id. (citing 20 C.F.R. § 404.1545(a)). The ALJ's RFC finding must provide a clear and satisfactory explanation of its basis. Id.

With respect to the ALJ's RFC finding, Plaintiff argues that the ALJ failed adequately to

consider the objective medical evidence, selectively credited certain limitations but dismissed others without explanation, and, without qualifications to do so, arrived at a RFC formulation that is not supported by any medical opinion in the record. Specifically, Plaintiff again argues that the ALJ erred in: crediting Plaintiff's inability to interact with others in finding the work restriction of limited contact with general public, but not as to contact with coworkers; failing to credit Plaintiff's assertion that he needs to lie down for about two hours a day; and failing to credit adequately the impact of the limitation that Plaintiff requires an option to alternatively sit and stand at his choosing. Above, the court addressed similar arguments with respect to errors in the ALJ's credibility determination. The same judicial review applies with respect to errors in the ALJ's RFC determination. On remand, the ALJ must correct these errors in both the credibility and RFC determinations.

In addition, Plaintiff argues that the ALJ erred in omitting in the RFC determination material MRI findings that show a severely debilitated lumbar spine as well as certain findings of consultative examiner, Edward Reiss, M.D. Because the court finds that the ALJ's credibility finding was flawed, and the RFC determination, by necessity, was based in part upon the flawed credibility determination, the court need not reach separate challenges to the RFC finding. A new RFC evaluation must be completed on remand.

C.     **The ALJ's Reliance on Vocational Expert Testimony.**

Lastly, Plaintiff argues that the ALJ erred in relying on the testimony of the VE because it was inconsistent with the Dictionary of Occupational Titles ("DOT"). The way the VE opinion is given, there is room for argument that, instead of offering the number of sedentary assembler

14

jobs, taking into consideration additional exertional and non-exertional limitations specified in the ALJ's hypothetical, the VE only provided the total number of *all* assembler jobs, including those that are light in exertional level, existing in the local and national economies.  (See R. 31, 337-38.)  The court does not decide this issue.  After correcting errors in the ALJ's credibility and RFC determinations on remand, the ALJ must present a complete hypothetical to the VE and consider any VE opinion that encompasses all limitations found to exist.

## VI.  Conclusion

Having found that remand is appropriate for the foregoing reasons, the court remands this matter to the Commissioner for further proceedings consistent with this opinion.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DWIGHT ECHOLS, SR.,                     :        CIVIL ACTION
                                        :
            Plaintiff,                  :        NO. 06-04076
                                        :
      v.                                :
                                        :
MICHAEL J. ASTRUE,[1]                   :
Commissioner of Social Security,        :
                                        :
            Defendant.                  :

## JUDGMENT ORDER

AND NOW, this 30th day of January, 2008, in consideration of Plaintiff's

Request for Review (Doc. No. 6), Defendant's Response in opposition thereto, and Plaintiff's

Reply, it is hereby ORDERED that the request is GRANTED IN PART and the matter is

REMANDED to the Commissioner to:

1. Review and accord the appropriate weight to all of the medical evidence

   submitted and clearly explain what he accepts and rejects and for what

   reasons;

2. Properly consider all of Plaintiff's credible impairments, individually and in

   combination;

3. Consider all non-medical evidence submitted;

4. Re-evaluate Plaintiff's credibility assessment and clearly explain in his

   credibility finding what testimony and medical evidence he accepts and rejects

   and for what reasons, including explaining: (a) the extent of any reliance on

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security and, pursuant to Fed. R. Civ. P. 25(d)(1), should be substituted for former Commissioner Jo Anne B. Barnhart as the official defendant in this matter.

State Agency Medical Consultants opinions and why; (b) the extent of any

reliance on an opinion from a medical source who is not an "acceptable

medical source" with respect to global assessment of functioning ratings; and

(c) which of Plaintiff's statements are credited, if any, which are not supported

by the medical record, if any, and why;

5. In light of any new determinations, re-evaluate Plaintiff's residual functional

capacity;

6. Seek the testimony of a Vocational Expert ("VE"), present to the VE each

credible limitation in a proper hypothetical question, and consider any VE

opinion that encompasses all limitations found to exist.

BY THE COURT:

_____
JAMES T. GILES          J.